IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JULIA WOOD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 3:18-CV-1434-NJR-RJD |
| | ) |
| CONTINENTAL TIRE THE AMERICAS, LLC, | ) |
| | ) |
| Defendant. | ) |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

This matter is before the Court on the Motion to Dismiss filed by Defendant Continental Tire the Americas, LLC ("CTA") (Doc. 18). For the following reasons, the motion is granted.

## FACTUAL AND PROCEDURAL BACKGROUND

CTA is a tire manufacturing facility in Mt. Vernon, Illinois (Doc. 1, p. 1). Julia Wood worked for CTA as a tire assembler from January 1993, until her termination in May 2018 (Doc. 1, pp. 1 & 4). CTA has an attendance policy and a four-step process for terminating employees for attendance violations (*Id.* at p. 2). Under the process, an employee accumulates "points" for every absence, and receives warnings after accumulating six, eight, and twelve points (*Id.*). Once an employee accumulates 13 points, and has received three warnings, he or she is terminated (*Id*). Excused absences, such as medical leave, do not result in the accumulation of points (*Id.*).

On August 24, 2012 and July 30, 2015, Wood filed workers' compensation claims with the Illinois Workers' Compensation Commission after suffering herniated discs in her neck from work-related incidents (*Id.* at p. 2). In August 2017, the herniated discs began causing neck pain and migraines, and Wood missed nine days of work from January 2018 through March 2018 (*Id.*). Also, Wood was approved for medical leave for four days in March 2018 for flu symptoms (*Id.*).

On April 23, 2018, CTA's human resources department and Wood's supervisor met with Wood to discuss the time she had taken off for her various medical conditions (*Id.* at p. 3). They told Wood they were investigating how to handle her medical issues related to her neck (*Id.*). Later that day, Wood received a call from her orthopedist, who notified her she would be undergoing neck surgery on May 29, 2018, and would need to remain off work for a period after (*Id.*). Wood relayed this information to her supervisor the following day, and a human resources representative instructed Wood to submit medical reports from her physicians for the days she missed work (*Id.*). On April 30, 2018, Wood complied with the request, and was suspended from work a few hours later (*Id.* at p. 4). On May 2, 2018, members of the human resources team called Wood and notified her she was terminated for accumulating too many points under the attendance policy (*Id.*).

On July 23, 2018, Wood filed this Complaint against CTA for retaliation under the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.* (Count I); retaliation under the Illinois Workers' Compensation Act ("ILWCA"), 820 ILCS 305/1-305 *et seq.* (Count II);

and intentional infliction of emotional distress ("IIED") under Illinois law (Count III).[1] On October 4, 2018, CTA filed a motion to dismiss, arguing the Complaint fails to state a claim for IIED (Doc. 19).

## DISCUSSION

The purpose of a Rule 12(b)(6) motion is to decide the adequacy of the complaint, not to determine the merits of the case or decide whether a plaintiff will ultimately prevail. *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). Claims filed within the federal courts are governed by Federal Rule of Civil Procedure 8(a)(2) which requires only "a short and plaint statement of the claim showing that the pleader is entitled to relief." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). For a claim to survive a Rule 12(b)(6) motion to dismiss, the claim must sufficiently "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" *Id*. A plaintiff need not plead detailed factual allegations, but must provide "more than labels and conclusions, and a formulaic recitation of the elements." *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 570 (2007). "A plaintiff still must provide only enough detail to give the defendant fair notice of what the claim is and the grounds upon which it rests, and, through his allegations, show that it is plausible, rather than merely speculative, that he is entitled to relief." *Lang v. TCF Nat. Bank*, 249 F. App'x 464, 466 (7th Cir. 2007) (citing

---

[1] The Court has subject matter jurisdiction over the FMLA claim pursuant to 28 U.S.C. § 1331, because it arises under federal law. The Court has supplemental jurisdiction over the remaining state-law claims pursuant to 28 U.S.C. § 1367.

*Bell Atlantic*, 550 U.S. 544, 555 (2007)). For purposes of a motion to dismiss under Rule 12(b)(6), the Court must accept all well-pleaded facts as true and draw all possible inferences in favor of the plaintiff. *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 879 (7th Cir. 2012).

To plead a claim for IIED, a plaintiff must allege (1) the defendant engaged in "truly extreme and outrageous" conduct; (2) the defendant either intended the conduct inflict severe emotional distress, or knew that there was a high probability the conduct would cause severe emotional distress; and (3) the conduct, in fact, caused the plaintiff severe emotional distress. *McGrath v. Fahey*, 126 Ill. 2d 78, 86, 533 N.E.2d 806, 809 (1988). "The law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it." *Id.*

"For conduct to be extreme and outrageous it must go 'beyond all bounds of decency' and be 'considered intolerable in a civilized community.'" *Fox v. Hayes*, 600 F.3d 819, 842 (7th Cir. 2010) (quoting *Lopez v. City of Chi.*, 464 F.3d 711, 721 (7th Cir. 2006)). The Illinois Supreme Court uses three factors to evaluate the outrageousness of a defendant's conduct. *Franciski v. Univ. of Chi. Hosp.*, 338 F.3d 765, 769 (7th Cir. 2003). "First, the more power or control the defendant has over the plaintiff, the more likely the conduct will be deemed extreme." *Id.* Second, "courts must consider whether the defendant reasonably believed its objective was legitimate." *Id.* And third, "courts must consider whether the defendant was aware the plaintiff was peculiarly susceptible to emotional distress, by reason of some physical or mental condition or peculiarity." *Id.* (internal citations and quotations omitted).

Liability for emotional distress is more constrained in the employment context. *Richards v. U.S. Steel*, 869 F.3d 557, 567 (7th Cir. 2017). "This is because 'personality conflicts and questioning of job performance are unavoidable aspects of employment and . . . frequently, they produce concern and distress.'" *Id.* (quoting *Van Stan v. Fancy Colours & Co.*, 125 F.3d 563, 567 (7th Cir. 1997)). "[I]f everyday job stresses resulting from discipline, personality conflicts, job transfers or even terminations could give rise to a cause of action for intentional infliction of emotional distress, nearly every employee would have a cause of action." *Naeem v. McKesson Drug Co.*, 444 F.3d 593, 605 (7th Cir. 2006). Thus, "courts are hesitant to conclude that conduct is extreme and outrageous in the employer-employee context unless an 'employer clearly abuses the power it holds over an employee in a manner far more severe than the typical disagreements or job-relates stress caused by the average work environment.'" *Richards*, 869 F.3d at 567 (quoting *Naeem*, 444 F.3d at 605).

Here, Wood's allegations do not establish the type of extreme and outrageous conduct that is actionable in an IIED claim. Wood asserts CTA terminated her because she exercised her rights under the FMLA and ILWCA; suspended her without explanation; and then fired her in violation of CTA policy, after 25 years of employment. Wood states CTA knew it was acting unlawfully, even though it was aware Wood was susceptible to emotional distress because of her physical ailments.

But wrongful termination is not, by itself, outrageous enough to support an IIED claim. *Fang v. Vill. of Roselle*, No. 95 C 5175, 1996 WL 386556, at *3 (N.D. Ill. July 5, 1996) ("[I]t is clearly established that wrongful discharge, alone, even where such a discharge

is malicious, does not constitute grounds for a claim of intentional infliction of emotional distress against an employer."). Rather, wrongful discharge is found to support an IIED claim only when it is accompanied by truly egregious conduct. *See, e.g., Pavilon v. Kaferly*, 204 Ill. App. 3d 235, 561 N.E. 1245 (1st Dist. 1990) (the plaintiff stated an IIED claims where she alleged her employer offered her money for sex; fired her when she refused; threatened to kill her, rape her, and take legal action to challenge the custody of her child; and attempted to disrupt her new employment relationship); *Anderson v. Viskase Corp.*, No. 92 C 1057, 1992 WL 211076, at *1 (N.D. Ill. Aug. 25, 1992) (the plaintiff stated an IIED claim where he alleged he was "berated, yelled at, and suspended from his job as a result of his missing work for treatment of skin cancer contracted on the job and for missing work to recover from two extremely serious heart attacks that occurred on the jobs"; was carried out on a stretcher as a result of those heart attacks; and told that "he must ignore his Doctor's orders and return to work or lose his job"); *Naeem*, 444 F.3d at 606 (the plaintiff stated a claim where managers forced her to climb up an unstable metal stairway to hook up computer equipment during her pregnancy; sabotaged her computer to deny her access and alter her files; publicly criticized her work during meetings with other supervisors; moved her office and files, causing her to be unable to locate paperwork; increased her workload, knowing she would not be able to meet the deadlines; and then terminated her).

Wood has simply not met her burden of alleging extreme and outrageous conduct. CTA's alleged actions—suspending Wood without explanation and firing her because she exercised her rights under the FMLA and ILWCA—do not come close to the level of

outrageousness that is necessary to state a claim for IIED. *See Brackett v. Galesburg Clinic Ass'n*, 293 Ill. App. 3d 867, 870-71, 689 N.E.2d 406, 408 (Ill. App. Ct. 1997) (dismissing IIED claim where the plaintiff was terminated after 44 years of employment; the termination was not according to policy; she was not given a reason for her termination; she was escorted out of the building and not allowed to collect her belongings; and the employer hinted she was terminated for something "really bad"); *Stoecklein v. Ill. Tool Works, Inc.*, 589 F. Supp. 139, 146 (N.D. Ill. 1984) (dismissing IIED claim based on wrongful discharge, age discrimination, refusal to pay severance pay, and refusal to transfer the plaintiff after promising to do so); *Harriston v. Chi. Tribune Co.*, 992 F.2d 697, 703 (7th Cir. 1993) (affirming dismissal of IIED claim where the plaintiff claimed she was discriminated against, reprimanded without cause, forced out of a management position, falsely accused of having poor sales, had her telephone calls monitored through the use of an eavesdropping device, and was threatened with discipline); *Thomas v. Coach Outlet Store*, No. 16 C 3950, 2017 WL 386656, at *5 (N.D. Ill Jan. 27, 2017) (dismissing IIED claim where the manager falsely accused the plaintiff of theft, petted her down, searched her belongings, and terminated her).

Also, CTA's actions do not constitute extreme and outrageous conduct, even considering Wood's susceptibility to emotional distress. "[T]he defendant's knowledge of the plaintiff's susceptibility does not alter the objective standard by which a court judges whether conduct is outrageous." *Van Stan*, 125 F.3d at 569. Instead, "where a defendant knows that a plaintiff is susceptible to emotional distress, we must determine whether an average member of the community would consider the defendant's conduct

extreme and outrageous under all of the circumstances of the case, including the defendant's knowledge of the plaintiff's susceptibility." *Id.* Under this standard, even if CTA knew Wood was sensitive to emotional distress because of her physical condition, the alleged conduct does not support a claim for IIED. Accordingly, Count III is dismissed for failure to state a claim.

In anticipation of the possibility of dismissal, Wood seeks leave to amend her Complaint. She proposes to add the allegations that Wood "informed Defendant of the need for neck surgery and time off" and "was then suspended pending 'investigation' and 'walked out' of the plant, humiliating her in front of her peers," and "was fired the very next day by phone" (Doc. 20, Ex. 1, pp. 5-6).

A motion for leave to amend a complaint is evaluated under Federal Rule of Civil Procedure 15(a)(2), which states courts "should freely give leave when justice so requires." *Alioto v. Town of Lisbon*, 651 F.3d 715, 719 (7th Cir. 2011). Although Rule 15 delineates a liberal pleading standard, a district court may deny leave to amend "if the proposed repleading would be futile." *Garcia v. City of Chi.*, 24 F.3d 966, 970 (7th Cir. 1994). "[F]utile repleadings include restating the same facts using different language, reasserting claims previously determined, failing to state a valid theory of liability, and the inability to survive a motion to dismiss." *Id.* (internal citations omitted).

In this instance, the amended IIED claim would be unable to survive a motion to dismiss. Based on the allegations in the proposed Amended Complaint, CTA's conduct is still not sufficiently outrageous or extreme to support an IIED claim. "[B]eing escorted out of the building cannot be considered extreme and outrageous behavior; indeed, it is

hardly uncommon for terminated employees to be escorted out of their workplaces." *McCammon-Chase v. Circle Family Care, Inc.*, 2010 WL 2925893, at *8 (N.D. Ill. July 23, 2010). Accordingly, Wood's motion for leave to amend is denied, because the repleading would be futile. Count III is dismissed with prejudice.

## Conclusion

For these reasons, the Motion to Dismiss for Failure to State a Claim (Doc. 18) is **GRANTED**. Wood's motion for leave to amend is **DENIED**. Count III of the Complaint is **DISMISSED with prejudice**.

IT IS SO ORDERED.

DATED: May 21, 2019

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**